# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

**V.**

BRADLEY CLARK, and
PATRICIA ACORD

## CRIMINAL COMPLAINT

CASE NUMBER: 1:18-mj-0452
-01
-02

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

Count One – beginning at a date unknown, continuing until on or about May 1, 2018, in the Southern District of Indiana and elsewhere, defendant Bradley Clark and others did Conspire to Possess with Intent to Distribute and to Distribute 500 grams or more of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

Count Two – on or about May 1, 2018, in the Southern District of Indiana, defendant Bradley Clark, being a user of controlled substances, did possess one or more firearms, in violation of Title 18, United States Code, Section 922(g)(3); and

Count Three: on or about May 1, 2018, in the Southern District of Indiana, defendant Patricia Acord, being a previously convicted felon, did possess one or more firearms, in violation of Title 18, United States Code, Section 922(g)(1).

I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_Erik Collins, Special Agent (DEA)_

**Sworn to before me, and subscribed in my presence**

May 2, 2018
**Date**

at   Indianapolis, Indiana

Tim A. Baker, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Erik Collins, being duly sworn under oath, states as follows:

## TRAINING AND EXPERIENCE

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I am an investigative or law enforcement officer within the meaning of Section 2501(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I have been employed by the Drug Enforcement Administration (DEA) since 2011. I am currently assigned to the DEA Indianapolis District Office, Indianapolis, Indiana, and have been so assigned since June of 2017.  During my employment as a law enforcement officer, I have participated in investigations involving the manufacturing, trafficking, and distribution of illegal narcotics.  I have utilized, and am therefore familiar with, the following investigative techniques: consensual and court-ordered electronic surveillance; physical surveillance; pole or other camera surveillance; trash covers; the development and operation of informants and cooperating defendants; the execution of search warrants; consent searches; undercover agent operations; Global Positioning Systems; parcel package drug interdiction; motel drug interdiction; highway drug interdictions; and the debriefing of defendants, witnesses, informants, and others who have knowledge of drug trafficking and of the laundering and concealing of proceeds from drug trafficking.

3.      In connection with my official DEA duties, I investigate criminal violations of state and federal controlled substances laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846 and 848, as well as Sections 952, 960 and 963. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I

have been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and the laundering and concealing of proceeds from drug trafficking, in violation of Title 18, United States Code Sections, 1956 and 1957. I have received training in investigations involving the interception of wire and electronic communications. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances and their use of telephones and code language to conduct their transactions.

4.      I have participated in federal electronic wiretap investigations involving individuals involved in the trafficking and distribution of controlled substances. I am familiar with the ways in which narcotics traffickers conduct their illicit business, including, but not limited to, their methods of importing and distributing controlled substances and their use of telephones and coded language to conduct their transactions.

5.      This affidavit is submitted in support of a complaint charging Patricia ACORD with being a Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922(g)(1).  This affidavit is further submitted in support of a complaint charging Bradley CLARK with being a User of Controlled Substances in Possession of a Firearm in violation of Title 18, United States Code, Section 922(g)(3), and Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, including 500 grams or more of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

6.      The statements contained in this Affidavit are based in part on my experience and background as a Special Agent of the DEA; on information provided by and conversations held with other law enforcement officers, including Special Agents/Task Force Officers of the DEA, officers of the

Indiana Metropolitan Police Department (IMPD), officers of the Kokomo Police Department (KPD), other law enforcement officers, and others described below; and on a review of reports and database records.

7.      I have not included each and every fact that has been revealed through the course of this investigation. I have set forth only the facts that are believed to be necessary to establish the required foundation for the issuance of the requested Arrest Warrants.

## FACTS AND CIRCUMSTANCES

8.      As set forth below, an investigation commenced in the Fall of 2017 by the Drug Enforcement Administration; this investigation revealed that numerous individuals in Kokomo, Indiana, have been conspiring to distribute controlled substances, including methamphetamine and heroin. A total of four cellular phones were intercepted pursuant to court authorization (hereinafter, Target Phones 1 through 4, collectively). Target Phone 1 is the telephone facility currently bearing the number (765) 461-4923, subscribed to in the name of Prepaid Customer, 17330 Preston Rd, Dallas, TX 75252, and used by Reggie BALENTINE. Target Phone 1 was intercepted from approximately February 22, 2018 through March 11, 2018. Target Phone 2 is the telephone facility currently bearing the number (765) 271-7861, subscribed to in the name of Reggie M BALENTINE, 720 S Courtland Ave, Kokomo, IN 46901, and used by Reggie BALENTINE. Intercepts over Target Phone 2 commenced on February 22, 2018, and concluded on March 23, 2018; intercepts recommenced on April 6, 2018, and ended on or about May 1, 2018. Target Phone 3 is the telephone facility bearing the number (765) 419-1951, subscribed to in the name of Prepaid Customer, 17330 Preston Road, Dallas, Texas 75252, and used by Reggie BALENTINE. Target Phone 4 is the telephone facility bearing the number (765) 865-5913, subscribed to in the name of Elijah James, PO Box 15955, Lenexa, Kansas 66285 and used by Michael JONES. Intercepts over Target Phones 3 and 4 commenced on April 6, 2018; intercepts over Target Phone 4 ended on April 20, 2018, and intercepts over Target Phone 3 ended on or about May 1, 2018.

9.      Based on intercepts and investigation to date, as set forth in further detail below, I have learned that Reggie BALENTINE and others are engaged in distributing controlled substances, including methamphetamine, in the Southern District of Indiana.   BALENTINE receives controlled substances, including methamphetamine, from a source of supply in Georgia, Pierre RILEY.   BALENTINE receives drugs from RILEY that are sent via couriers on the Megabus.   Perry JONES assists BALENTINE with the distribution of controlled substances in Kokomo, Indiana, including large amounts of methamphetamine.

10.     Through investigation, other agents and I identified 312 S. Calumet in Kokomo, Indiana as a location where Perry JONES and Reggie BALENTINE would store drugs.   In addition to using KINNEY's residence to store drugs/drug proceeds, investigation has demonstrated that BALENTINE and Perry JONES also utilize 312 S. Calumet Street in Kokomo to store drugs and guns.   The use of this location as a stash house has been discovered through the course of investigation, including through wiretap calls, many of which have been corroborated through physical surveillance.

**Events of March 5, 2018**

11.     Through investigation, it appeared that BALENTINE received a load of controlled substances on March 5, 2018.   As set forth below, I believe that once BALENTINE received the drugs, Perry JONES then brought the drugs to 312 S. Calumet, to be stored until BALENTINE was ready to distribute them.   At approximately 3:22 p.m. on March 5, 2018, BALENTINE received a call on Target Phone 2 from coconspirator Michael JONES at Target Phone 4. During the call, BALENTINE stated, "I'm the hardest man in the world to get in touch with. I hate my life. Nah, later today baby. I got you. I'mma load you down too [BALENTINE would be receiving his load of methamphetamine that night and would give JONES some]." Michael JONES responded, "Man [intelligible]."  BALENTINE responded, "Yeah,

I'mma probably get you...I'mma probably just get you the whole brick [pound of methamphetamine]."[1] Michael JONES responded, "Alright." BALENTINE replied, "Okay." Michael JONES responded, "For sure though?" BALENTINE answered, "Um, yeah I'm for sure. All it is get the rest of the way here [load was currently on a bus *en route*]." Michael JONES responded, "Well, I'm glad to hear." BALENTINE replied, "Yeah." Michael JONES responded, "They blowing me down nigga [customers been wanting methamphetamine]." BALENTINE replied, "Do you know how this motherfucker has been going?" Michael JONES answered, "I already know." BALENTINE responded, "I'm talking about motherfucker's out from Terre Haute, motherfucker's out of Elkhart. This motherfucker been going crazy [customers from all over were waiting on the methamphetamine]." In the call, BALENTINE gave Michael JONES a timeline: "Nah, it will probably be closer to 7ish somewhere around there [BALENTINE expected the drug courier to arrive around 7:00p.m. that evening]." Michael JONES responded, "Alright." BALENTINE replied, "But I got you. You're first on deck [Michael JONES would be the first customer to get drugs from the pending load]."

12.     At approximately 5:10 p.m. on March 5, 2018, surveillance officers observed coconspirator Kristin KINNEY pick up an unknown female courier from the Indianapolis bus station. KINNEY then drove the courier directly to BALENTINE's house (720 S. Courtland), arriving at approximately at 6:35 p.m. At approximately 7:16 p.m. on March 5, 2018, surveillance officers observed Perry JONES depart his and BALENTINE's residence in a Chevy Malibu, carrying a bag. Perry JONES drove to 312 South Calumet in Kokomo. Perry JONES then departed the residence, and drove his Malibu to Michael JONES' residence, arriving at approximately 8:33 p.m. At approximately 8:52 p.m., surveillance officers observed Perry JONES depart in the Malibu. Based on investigation to date, including BALENTINE's desire to

---

[1] Information within brackets is my interpretation of coded or cryptic language contained within the intercepted conversations. This interpretation is based on my training and experience, as well as upon my daily involvement in this investigation.

not keep large amounts of drugs at his residence, I believe that when Perry JONES left 720 S. Courtland with a bag, that bag contained the newly arrived shipment of drugs. Perry JONES brought the majority of those drugs to 312 S. Calumet, and then brought Michael JONES the drugs that BALENTINE had promised him earlier that day.

**Events of March 8, 2018**

13.     At approximately 7:06 p.m. on March 8, 2018, BALENTINE used Target Phone 2 to call Perry JONES. During the call, BALENTINE stated, "Um, Moe [REED] over here with me." P.JONES responded, "Okay," and BALENTINE replied, "Uh, one of the millennium [Taurus Millennium is a manufacturer of guns] small joints [handgun]?" P. JONES responded, "Yes, sir [that is, P.JONES had a Taurus Millenium available for sale]." BALENTINE replied, "And then the fat, the big fat...the big 40 [.40 caliber handgun]." P.JONES responded, "Uh-huh," and BALENTINE replied, "Its plastic. The real plastic 40 and then one of the millennium. The little sub joint 40." P.JONES responded, "Uh-huh." BALENTINE replied, "He [REED] need both of them. You can bring them to the house [720 S. Courtland] if you can." P.JONES responded, "Okay."

14.     At approximately 7:17 p.m. on March 8, 2018, surveillance officers observed P.JONES' Chevy Malibu at 312 S. Calumet Street in Kokomo. At approximately 7:45 p.m., officers observed P.JONES leave 312 S. Calumet Street and drive to 718 S. Bell Street in Kokomo. At approximately 8:05 p.m., surveillance officers observed P.JONES leave Bell Street, and was lost shortly thereafter by surveillance officers, due to P.JONES' erratic driving, which included driving through alleys, traveling at high speed, and making abrupt turns, which led officers to believe that P.JONES was attempting to confirm whether he was being followed by law enforcement. He was not found that evening, but based on investigation to date, I believe that the purpose of this trip from 312 S. Calumet by P.JONES was likely in furtherance of BALENTINE's above request to obtain firearms, and that P.JONES did, in fact, bring

those two guns from 312 S. Calumet to 720 S. Courtland. This belief is corroborated by subsequent calls by BALENTINE the next day, which confirmed that BALENTINE had obtained the guns.

15.     At approximately 5:14 p.m. on March 9, 2018, BALENTINE received an incoming call on Target Phone 2 from coconspirator Jason REED. During the call, BALENTINE stated, "Man, I called you last night. Man them utensils [guns] is at the house." REED responded, "Okay, I'mma go through there and grab them. I never got a call." BALENTINE responded, "'Cuz [Perry JONES] should be there and he know they for you, both of them. With the shells for you too." REED replied, "Alright. I never got a call from your phone." BALENTINE stated, "With the shells [ammunition] for you too…"

16.     At approximately 8:09 p.m. on March 10, 2018, BALENTINE, using Target Phone 2, received an incoming call from Jason REED who was using (760) 333-5669. In this call, BALENTINE and REED talked about going to pickup REED's car that was in Lafayette. After that discussion, BALENTINE asked, "Uh, you want just want me to leave them joints [guns] then? 'Cause I brought them inside. They inside the house [the guns were initially hidden outside]." REED answered, "Yeah. I can come, I'll have Shorty [unknown female] get them when she get through throwing up and shit." REED and BALENTINE ended the call shortly thereafter.

17.     At approximately 11:54 p.m. on March 10, 2018, BALENTINE used Target Phone 2 to call REED. BALENTINE immediately asked, "Hey what you gonna do about the poles [guns]?" REED responded, "Uh, damn [U/I] tonight. If not I'll come and get 'em in the a.m." BALENTINE replied, "Come and get a.m. in the a.m. please." REED responded, "I got you." BALENTINE responded, "All right," and the call concluded.

18.     On March 11, 2018, at approximately 2:26 p.m., REED texted BALENTINE on Target Phone 2, "Be there in about an hour." Approximately eight minutes later, BALENTINE texted REED back, "Ok." At approximately 4:37 p.m. that afternoon, surveillance officers observed REED arrive at

BALENTINE's residence in a white Ford Escape Hertz rental car, and then enter the house. At approximately 4:40 p.m., surveillance officers observed REED exit BALENTINE's residence and depart in his white Ford Escape. At approximately 4:49 p.m., Kokomo Police Department Officers attempted to make a traffic stop on the white Ford Escape in the Lowe's parking lot located at 4005 S. Lafountain Street, Kokomo, Indiana, as officers believed that REED, a convicted felon, had picked up the firearms he and BALENTINE had previously discussed. REED refused to stop, and then drove through the grass on the northeast corner of the Lowe's parking lot. REED then drove onto Alto Road at a high rate of speed. Once near the intersection of Alto Road and State Route 931, REED was involved in a collision with another vehicle, which contained an adult and a small child. REED was able to drive away from that wreck, and he continued to drive east at a high rate of speed on Alto Road. At roughly the 800 block of East Alto Road, REED veered off to the right side of the road and began to flip out of control in the front yard of 809 East Alto Road, Kokomo, Indiana. After hitting the house at 809 East Alto Road, the Ford Escape ended up on its roof, with the rear end resting against a tree in the front yard of the residence. REED climbed from the front driver's side window, and began to run to the east. Officers chased REED before one officer deployed his taser which made contact with REED. After a short struggle REED was placed into custody.

19.     After REED was taken into custody, officers began looking around the vehicle. Officers located REED's wallet outside of the vehicle. Officers also observed a gray plastic bag lying directly under the driver's side of the door, with two black handles sticking out of the bag. After further examination, Officers discovered two handguns in the bag. The first handgun was a black Springfield Armory XD40 and the second was a black Taurus PT11G 9mm. It should be noted that Perry JONES and BALENTINE are also previously convicted felons, as well as Jason REED.

**312 S. Calumet Remains an Active Stash Location**

20.     BALENTINE and Perry JONES continue to utilize 312 S. Calumet as a location to further their drug trafficking.   On April 10, 2018 at approximately 9:49 p.m., Reggie BALENTINE and coconspirator Shaun MYERS spoke over Target Phone 2. In this call, MYERS asked BALENTINE if he still had some of the "cliff [unknown type of controlled substance]." BALENTINE said that he did, and MYERS said he needed, "four [four ounces of the unknown drug]."     After this phone call, at approximately 10:50 p.m. on April 10, 2018, Reggie BALENTINE called Perry JONES over Target Phone 2, and asked Perry JONES to pick up a, "four piece with one twelve in it [a reference to the four ounces of drugs that MYERS wanted from BALENTINE]." BALENTINE told Perry JONES to run it by "OL's crib." Through investigation, I know 'OL' to be a nickname for Shaun MYERS. BALENTINE also told JONES that MYERS' uncle will be at this location.

21.     At approximately 12:05 a.m. on April 11, 2018, surveillance officers observed Perry JONES' Malibu at 312 S. Calumet. At approximately 12:32 a.m., surveillance officers observed Perry JONES arrive at 1901 S. Goyer Road, Kokomo, Indiana (Shaun MYERS' apartment). Officers observed JONES circle the parking lot of the apartment two times then exit the lot southbound; through my involvement in this investigation, I believe it is likely that Perry JONES was checking the area to make sure it was safe to do the delivery of the four ounces of drugs.  Perry JONES then left the apartment complex, drove to a nearby parking lot, and then returned to Shaun MYERS' apartment complex two minutes later. JONES then walked into MYERS' apartment building, and walked out approximately three minutes later. I believe the purpose of this trip by Perry JONES  was to deliver the four ounces of drugs to MYERS that BALENTINE had promised MYERS; I also believe that Perry JONES had obtained the drugs from 312 S. Calumet—the location from where JONES was followed just prior to his trip to MYERS' residence.

**Indictment and Search Warrants**

22.    On April 18, 2018, a grand jury in the Southern District of Indiana returned an indictment

which charged defendants Pierre RILEY, Reggie BALENTINE, Michael O'BANNON, Kristin KINNEY,

Michael JONES, Jason REED, Derrick OWENS, Deshoun EVERHART, and Perry JONES with

conspiring to possess with intent to distribute and to distribute controlled substances, including 50 grams

of methamphetamine, in violation of Title 21, United States Code, Section 841 and 846 (Cause Number

1:18-cr-116 TWP-MJD).    Additionally, on April 26, 2018, the DEA obtained warrants to search ten

locations in the Southern District of Indiana, including 312 S. Calumet in Kokomo, Indiana.

23.    On May 1, 2018, DEA agents executed the search warrant obtained for 312 S. Calumet in

Kokomo, Indiana (as well as additional search warrants obtained in the course of this investigation, both

state and federal).  In the course of the search of 312 S. Calumet Street, agents found two occupants of the

residence, Patricia ACORD and Bradley CLARK. Prior to the full search of the residence, agents informed

ACORD and CLARK of their *Miranda* rights, which they waived.  When asked if there was anything in

the house, ACORD stated that she had a gun under the mattress in the bedroom (the house only had one

room containing any mattresses).  Agents went to the bedroom, searched between the mattress and the

box spring, and found one firearm on one side the bed, which ACORD said was hers.  This firearm was a

loaded Jiminez .380 handgun.  Agents searched the other side of the bed between the mattress and box

spring, and located two additional firearms: a loaded Ruger .45 caliber handgun, and a loaded Hi-Point 9

mm handgun. Agents found a cellular phone on top of the bed where the Jiminez .380 was found; ACORD

stated that this phone was hers.  Agents found a second cellular phone on the floor at the side of the bed

where the two additional firearms were found; CLARK said this cell phone was his.

24.    Agents continued to search the residence.  In the search of the living room, agents moved

the electronic fireplace out of its case against the wall after a narcotics detector dog alerted to that area. In

the natural void behind the fireplace, agents found three additional handguns, two of which were contained

in a safe. The two firearms in the safe were Rossi 32 Smith & Wesson revolver, loaded with two rounds; and a Rossi .357 revolver. The firearm outside the safe was a Hi-Point 9 mm handgun. Through my conversations with the ATF agents who assisted in this investigation, I know that all firearms found at 312 S. Calumet on May 1, 2018 were manufactured outside the State of Indiana.

25.     In their search of the residence, agents also found an additional safe in the laundry room. In this safe, agents found two scales, seven exhibits that contained powdery substances that appeared to be controlled substances, based on the seizing agents' training and experience.[2] Agents also seized a plastic container that contained plastic baggies of a crystal substance that appeared, based on the agents' experience, to likely be methamphetamine. The substance in the plastic container field-tested positive for methamphetamine, and had a gross weight of 600 grams.

26.     In interviewing both ACORD and CLARK, they each acknowledged that they live at 312 S. Calumet, and said they had lived there for several months. Both acknowledged that they knew the safe in the laundry room was there, but claimed that they did not have the combination to that safe, and did not know what was in the safe. Based on investigation to date, I believe that the contents of the safe likely belonged to Perry JONES and Reggie BALENTINE.

27.     ACORD and CLARK were arrested. They were each interviewed by law enforcement in recorded interviews. In his interview, CLARK admitted that Perry JONES routinely came to his house on Calumet. He further admitted that he and JONES smoked methamphetamine together on numerous occasions in the past few months, estimating that it had occurred approximately one hundred times. CLARK further admitted in this recorded interview that he knew JONES was storing drugs at his (CLARK's) residence, in the safe. Both ACORD and CLARK admitted that Perry JONES had a key to their residence on Calumet Street, and he would routinely go to the safe.

---

[2] It is DEA policy not to field-test powdery substances on-site, given the significant danger of the substance being fentanyl or some other extremely hazardous substance.

28.     I have obtained information regarding ACORD's criminal history.  I have learned that ACORD was previously convicted in 2001 in Howard County, Indiana of felony Possession of a Scheduled Controlled Substance as a Class C felony.  When ACORD was interviewed, she admitted that she had previously sustained a felony drug conviction.

**CONCLUSION**

29.     Based upon my training and experience and the facts set forth herein, I submit that probable cause exists for the arrest of Patricia ACORD and Bradley CLARK, as set forth above.

Erik Collins, Special Agent
Drug Enforcement Administration.


Sworn to before me on this
2nd day of May, 2018

Tim A. Baker, Magistrate Judge
United States District Court
Southern District of Indiana